UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SAIO BARZEE,

                                    Plaintiff,

                    -against-

SING SING C.O. A.M. ABDULLA, et al,

                                    Defendants.

**OPINION & ORDER**

23-CV-2328 (PMH)

PHILIP M. HALPERN, United States District Judge:

        Saio Barzee ("Plaintiff"), currently incarcerated at Onondaga County Correctional Facility,

brings this action *pro se* and *in forma pauperis* under 42 U.S.C. §§ 1983 and 1985, predicated

upon violations of the First, Eighth, and Fourteenth Amendments to the United States Constitution.

He asserts that during his confinement at Sing Sing Correctional Facility ("Sing Sing"), the

following defendants violated his rights: A.M. Abdulla, E. Torres, V. Santiago, Quadrena T.

Quick, John Velez, John Acevedo, Acevedo ("Acevedo #2")[1], M. Delacruz, M. Jack, Y. Young,

Penelis, J.P. Franco, G. Darden, Marsar, C. Nickens, M. Ruquet, E. Pagan, Gonzalez, T. Maid, G.

Brown-Richbourgh, J. Taylor, Drewes, Jimenez, C. Garrett, Rodriguez, P. Byrd, R.F. Mayes, and

B.J. Bodge (collectively, "Defendants").[2]

---

[1] Plaintiff named Sergeant Acevedo as a Defendant in the Complaint. Since then, the New York Attorney General's Office has identified a Sergeant Acevedo as matching the description of one of the John Doe Defendants named in the Complaint. (Doc. 24). As such, there are two defendants with the name "Sing Sing Sergeant John Acevedo" listed on the docket.

[2] Plaintiff's Complaint initially named fourteen John and Jane Doe correctional officers as defendants. (Doc. 1). The Court issued a *Valentin* Order on May 1, 2023, directing the New York State Attorney General's Office "to identify the John and Jane Doe defendants described in the complaint." (Doc. 13). The New York State Attorney General's Office has since identified all but two John and Jane Doe defendants (Docs. 24, 31, 39): the twenty-fourth person listed as a defendant in the Complaint's "Continuation of Civil Complaint Caption" (Compl. at 2-3) ("John Doe #24"); and the twenty-eighth person listed as a defendant in the Complaint's "Continuation of Civil Complaint Caption" (*id.*) ("John Doe 28"). The Court, in accordance with the May 1, 2023 Order (Doc. 13), deems the Complaint amended as to the defendants identified by the New York State Attorney General's Office.

Plaintiff commenced this action on March 7, 2023. (Doc. 1, "Compl."). Liberally construed, Plaintiff's pleading presses eight claims for relief under 42 U.S.C. § 1983 and 42 U.S.C. § 1985: (i) excessive force in violation of the Eighth Amendment; (ii) failure to intervene in violation of the Eighth Amendment evincing deliberate indifference; (iii) deliberate indifference to a serious medical need in violation of the Eighth Amendment; (iv) retaliation in violation of the First Amendment; (v) a second claim for retaliation in violation of the First Amendment; (vi) obstruction of justice; (vii) conspiracy under 42 U.S.C § 1985; and (viii) denial of procedural due process under the Fourteenth Amendment. (*See generally* Compl.). He seeks, in his Complaint, monetary relief as well as both declaratory and injunctive relief. (*Id.* at 144-152).[3]

Defendants filed a motion to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(6) on April 29, 2024. (Doc. 86).[4] Defendants filed their memorandum of law in support of their motion to dismiss that same day. (Doc. 87, "Def. Br."). Plaintiff filed his memorandum of law in opposition on July 9, 2024. (Doc. 93, "Pl. Br.").[5] Defendants filed their reply on August 16, 2024 (Doc. 101) ("Reply"), and Plaintiff filed, with the Court's permission, a sur-reply and affidavit in support of his sur-reply on October 3, 2024. (Docs. 114, 115).[6]

---

[3] Citations to specific pages of the Complaint, its attachments, and other filings on the docket correspond to the pagination generated by ECF.

[4] Although Defendants' Notice of Motion omits C. Garrett as a moving Defendant, Defendants' memorandum of law includes him in the caption. The Court therefore construes Defendants' motion as being made on behalf of all named defendants. The Notice of Motion also names Defendants Acevedo, Velez, and Jack twice.

[5] Plaintiff filed three total opposition briefs: (1) on June 11, 2024 (Doc. 92), (2) on July 9, 2024 (Doc. 93), and (3) on July 19, 2024 (Doc. 98). Although Plaintiff did not request, and the Court did not grant, leave to file multiple opposition briefs, the Court nonetheless considers each of them, given the liberality afforded *pro se* litigants. Citations herein reference only Plaintiff's July 9, 2024 opposition because (i) the briefs are substantially similar; (ii) Defendants, in their Reply, only address the July 9, 2024 brief; and (iii) Plaintiff merely resubmitted his July 9, 2024 opposition on July 19, 2024. (*See* Doc. 97 (July 19 letter from Plaintiff explaining that he is resubmitting the July 9 opposition papers)).

[6] Given the liberality afforded *pro se* litigants, it is appropriate to consider new allegations in a *pro se*

For the reasons set forth below, Defendants' motion to dismiss is GRANTED in part and DENIED in part.[7]

## BACKGROUND

Plaintiff was an inmate at Sing Sing in September 2020. On September 9, 2020, Plaintiff had an argument with several correctional officers about his use of a radio. (Compl. ¶¶ 1-20, 169). The incident giving rise to Plaintiff's claims occurred the next day. Plaintiff alleges that Defendant Abdulla, who had been involved in the argument the previous day, confronted Plaintiff, asking him "what was up with yesterday"? (*Id.* ¶¶ 32, 171). Defendant Abdulla then led Plaintiff, at his request, back to his cell. (*Id.* ¶¶ 35, 174). Rather than heading to Plaintiff's cell, however, Plaintiff

---

plaintiff's opposition to a motion to dismiss where they are consistent with the allegations contained in the pleading. *Vail v. City of New York*, 68 F. Supp. 3d 412, 427 (S.D.N.Y. 2014) ("Where new allegations in a pro se plaintiff's opposition memoranda 'are consistent with the allegations contained' in the Complaint, they may be read 'as supplements to th[e] pleadings . . . .'" (quoting *Boyer v. Channel 13, Inc.*, No. 04-CV-02137, 2005 WL 2249782, at *6 (S.D.N.Y. Mar. 9, 2005))); *see also Davis v. Cnty. of Suffolk*, No. 18-CV-00303, 2020 WL 7699919, at *4 (E.D.N.Y. Oct. 30, 2020) ("[I]n deciding a motion to dismiss a pro se complaint, it is appropriate to consider materials outside the complaint to the extent that they are consistent with the allegations in the complaint, including documents that a pro se litigant attaches to his opposition papers." (internal citations and quotation marks omitted)), *adopted by* 2020 WL 7041082 (E.D.N.Y. Dec. 1, 2020). Accordingly, the Court considers on this motion the additional allegations in Plaintiff's opposition submissions, sur-reply, and affidavit in support of his sur-reply.

[7] Paragraphs 270-282 of Plaintiff's Complaint, and claims 9 through 11, relate to conduct by former Commissioner Anthony Annucci and Superintendent Michael Capra. However, during the pre-motion conference held on March 12, 2024, Plaintiff agreed to discontinue the action against them. Annucci and Capra were terminated as defendants in this action by Order of the Court on that day. (Doc. 84). Plaintiff, in an affidavit attached to his July 9, 2024 opposition brief, argues that the Court should "re-join" these terminated defendants. (Doc. 93 at 28-29; *see also* Doc. 99). To the extent Plaintiff is requesting that the Court reconsider its March 12, 2024 Order, that request is denied. As an initial matter, Plaintiff agreed on the record to drop Annucci and Capra as defendants. Further, Plaintiff never filed a notice of motion for reconsideration of the Court's Order as required by Local Civil Rule 6.3, which provides that "a notice of motion for reconsideration must be served within 14 days after the entry of the court's order being challenged." Even if the Court were to construe Plaintiff's opposition brief as a sufficient alternative to the dictate in the rule that a notice of motion is required, his brief was still filed more than fourteen days after the Court's May 12, 2024 Order. Accordingly, Plaintiff's motion for reconsideration is denied as untimely. *See McGraw-Hill Glob. Educ. Holdings, LLC v. Mathrani*, 293 F. Supp. 3d 394, 397 (S.D.N.Y. 2018) ("As numerous cases from this Circuit have held, the untimeliness of a motion for reconsideration is reason enough to deny the motion.").

alleges that he was led to Defendant Torres and a John Doe officer who "block[ed]" his "path." (*Id.* ¶¶ 37, 175, 182).

As alleged, all three Defendants physically assaulted Plaintiff. Defendant Abdulla "sucker punch[ed]" Plaintiff, and Defendant Torres and the John Doe officer then "also [began] landing punches to [] [P]laintiff's head and face area." (*Id.* ¶¶ 38-39, 176-177, 186). After these Defendants placed Plaintiff in "mechanical restraints," Defendant Santiago ran to the scene and used pepper spray on Plaintiff. (*Id.* ¶ 40; Pl. Br. ¶ 19). Defendant Abdulla also "bashed [Plaintiff's] face against the bars of [a] gate." (Compl. ¶ 47). This alleged physical assault caused "deep" lacerations in Plaintiff's "mouth and upon his face" as well as "bruises upon his face" and a "busted lip." (*Id.* ¶ 183; Pl. Br. ¶¶ 24, 50). According to the Complaint, Plaintiff's "trauma marks on his face" were visible "for over two weeks." (Compl. ¶ 183).

Plaintiff was taken to the "Sing Sing Correctional facility hospital" as a result of these injuries. (*Id.* ¶¶ 49-50). Defendants Young and Penelis—who Plaintiff alleges were "laughing" at him (*id.* ¶ 51)—treated Plaintiff for his injuries twenty minutes after he arrived at the facility: washing his face and eyes for the pepper spray (*id.* ¶ 53) and covering his head with a medical wrap (*id.* ¶¶ 51-52; *see also* Pl. Br. ¶ 44). Plaintiff was then transported to Mount Vernon Hospital for further treatment where he received stitches over his right eyebrow. (Compl. ¶¶ 59, 63, 187).

After returning from Mount Vernon Hospital that same day, Plaintiff was placed in the Special Housing Unit ("SHU"). (*Id.* ¶ 67). Sing Sing staff, in connection with Plaintiff's transfer to SHU, "packed" Plaintiff's "personal property" from his prior jail cell. (*Id.* ¶ 69). Plaintiff alleges that Sing Sing staff failed to "pack[]" all of his personal property for storage. (*Id.*; *see also id.* ¶¶ 230, 231). Plaintiff thus filed, on September 10, 2020, an "inmate claim" alleging "that [his]

4

personal property . . . was missing." (*Id.* ¶ 70). Plaintiff also filed "grievances" against Defendants Abdulla, Torres, and Santiago for the alleged physical assault. (*Id.* ¶ 206).

Plaintiff was served the next day with a copy of a misbehavior report written by Defendant Abdulla. (*Id.* ¶ 68). On September 16, 2020, Sing Sing held a superintendent disciplinary hearing in light of Defendant Abdulla's report. (*Id.* ¶ 72). Defendant Mayes presided over the hearing. (*Id.*). On September 30, 2020, Defendant Mayes found Plaintiff guilty of "[a]ssault[ing] [] staff and [] refusing [a] direct order."[8] (*Id.* ¶ 97). Defendant Mayes then imposed a punishment of 150 days of confinement in the SHU. (*Id.*). This was not the first time that Plaintiff had been found guilty at a disciplinary hearing. Defendant Bodge found Plaintiff guilty, in August 2020, of various infractions arising out of an August 18, 2020 altercation with correctional staff. (Compl. ¶¶ 255-264; *see also id.* at 255-263 (exhibits to the Complaint related to Plaintiff's disciplinary hearing before Defendant Bodge)).

Around a month after Plaintiff's hearing before Defendant Mayes, on October 22, 2020, Plaintiff alleges that Sing Sing correctional officers retaliated against him for his September 2020 "inmate claim" and "grievances." Specifically, Plaintiff alleges that Defendants Franco, Ruquet, and Gonzalez "ran into his cell," "woke [him] up," and proceeded to "punch [] [him] several times in the face and head area." (Compl. ¶¶ 100-105, 207, 214). Defendant Franco, as alleged, then directly threatened Plaintiff: the correctional officers "should beat the living shit out" of Plaintiff for writing grievances. (*Id.* ¶ 105).

That same day, Plaintiff was transferred from Sing Sing to an "[u]pstate facility." (*Id.* ¶ 131). Before and after that transfer, Plaintiff has unsuccessfully sought to file grievance claims

---

[8] Defendant Mayes also found Plaintiff not guilty of "violent conduct" and "creating a disturbance." (Compl. ¶ 97).

about, among other things, his allegedly lost property and adverse treatment by correctional officers. (*Id.* ¶¶ 146-151, 155, 225; Pl. Br. ¶ 59).

## STANDARD OF REVIEW

On a Rule 12(b)(6) motion, a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).[9] A claim is plausible on its face "when the ple[d] factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant acted unlawfully." *Id.* The factual allegations pled "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"When there are well-ple[d] factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. Thus, the Court must "consider the legal sufficiency of the complaint, taking its factual allegations to be true and drawing all reasonable inferences in the plaintiff's favor." *Harris v. Mills*, 572 F.3d 66, 71 (2d Cir. 2009). The presumption of truth, however, "is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 72. A plaintiff must provide "more than labels and conclusions" to show entitlement to relief. *Twombly*, 550 U.S. at 555.

---

[9] Unless otherwise indicated, case quotations omit all internal citations, quotation marks, footnotes, and alterations.

A complaint submitted by a *pro se* plaintiff, "however inartfully ple[d], must be held to less stringent standards than formal pleadings drafted by lawyers . . . ." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (internal quotation marks omitted). Because *pro se* plaintiffs "'are often unfamiliar with the formalities of pleading requirements,' courts must 'apply a more flexible standard in determining the sufficiency of a *pro se* [complaint] than they would in reviewing a pleading submitted by counsel.'" *Smith v. U.S. Dep't of Just.*, 218 F. Supp. 2d 357, 361 (W.D.N.Y. 2002) (quoting *Platsky v. Cent. Intell. Agency*, 953 F.2d 26, 28 (2d Cir. 1991)). However, while "[p]ro se complaints are held to less stringent standards than those drafted by lawyers, even following *Twombly* and *Iqbal*," dismissal is "appropriate where a plaintiff has clearly failed to meet minimum pleading requirements." *Thomas v. Westchester Cty.*, No. 12-CV-06718, 2013 WL 3357171, at *2 (S.D.N.Y. July 3, 2013) (internal citations omitted); *see also Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) ("Even in a *pro se* case . . . although a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." (internal quotation marks omitted)). Therefore, while the Court must "draw the most favorable inferences that [a plaintiff's] complaint supports, [it] cannot invent factual allegations that [a plaintiff] has not pled." *Chappius*, 618 F.3d at 170. The Court does, however, have a duty to interpret "the pleadings of a *pro se* plaintiff liberally and interpret them 'to raise the strongest arguments that they suggest.'" *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)).

## ANALYSIS

Plaintiff presses claims under 42 U.S.C. § 1983. That law provides, in pertinent part, that "[e]very person who, under color of any statute . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the

Constitution and laws, shall be liable to the party injured . . . ." 42 U.S.C. § 1983. "[T]his language does not create substantive rights; rather, it creates a mechanism by which individuals can vindicate the violation of rights secured elsewhere." *Linares v. Annucci*, No. 19-CV-11120, 2021 WL 2689736, at *6 (S.D.N.Y. June 30, 2021) (quoting *Santucci v. Levine*, No. 17-CV-10204, 2021 WL 76337, at *3 (S.D.N.Y. Jan. 8, 2021) (alteration in original)).

I.  <u>Plaintiff's First Claim for Relief: Excessive Force</u>

Plaintiff's first claim for relief is for excessive force against Defendants Abdulla, Torres, Santiago, and John Doe in violation of violation of the Eighth Amendment. (Compl. ¶¶ 167, 184).

"A prison official's use of force violates the Eighth Amendment when, objectively, 'the alleged punishment [was] . . . sufficiently serious,' and, subjectively, 'the prison official . . . [had] a sufficiently culpable state of mind.'" *Tofres v. City of New York*, No. 17-CV-06604, 2019 WL 7602181, at *6 (S.D.N.Y. Aug. 14, 2019) (quoting *Boddie v. Schnieder*, 105 F.3d 857, 861 (2d Cir. 1997) (alterations in original), *adopted by* 2019 WL 4784756 (S.D.N.Y. Sept. 30, 2019)). "The objective component of a claim of cruel and unusual punishment focuses on the harm done, in light of 'contemporary standards of decency.'" *Wright v. Goord*, 554 F.3d 255, 268 (2d Cir. 2009) (quoting *Hudson v. McMillian*, 503 U.S. 1, 8 (1992)). This objective component requires, in the abstract, "that the conduct was objectively harmful enough or sufficiently serious to reach constitutional dimensions." *Bradshaw v. City of New York*, 855 F. App'x 6, 9 (2d Cir. 2021) (quoting *Harris v. Miller*, 818 F.3d 49, 64 (2d Cir. 2016)). The subjective component, on the other hand, requires a "showing that 'the defendant had the necessary level of culpability, shown by actions characterized by wantonness in light of the particular circumstances surrounding the challenged conduct.'" *Randolph v. Griffin*, 816 F. App'x 520, 523 (2d Cir. 2020) (quoting *Harris*, 818 F.3d at 63). "[T]he test for wantonness is whether the force was used in a good-faith effort to

maintain or restore discipline, or maliciously and sadistically to cause harm." *Fabricio v. Annucci*, 790 F. App'x 308, 310 (2d Cir. 2019) (quoting *Harris*, 818 F.3d at 63).

Defendants first argue that Plaintiff's Complaint "vividly describes his non-compliance with orders; his harassment of officers; and his struggle to avoid being forced to submit." (Def. Br. at 15). Defendants continue that Plaintiff's excessive claim is thus "blatantly contradicted by the record." (*Id.*). But, in this posture, the Court must take the Complaint's factual allegations as true and draw all reasonable inferences in Plaintiff's favor. As alleged, Plaintiff had complied with all orders leading up to the purported physical assault. He did not resist Defendant Abdulla's "pat frisk[]." (Compl. ¶¶ 30-31). Also, he peacefully followed Defendant Abdulla back to his cell. (*Id.* ¶¶ 33-37). Only then did Defendant Abdulla "sucker punch" his "head and face area," while Defendant Torres and the John Doe officer "also [began] landing punches to" Plaintiff's "head and face area." (*Id.* ¶¶ 38-39). Moreover, Plaintiff alleges that he sustained further injuries once restrained: Defendant Abdulla "bashed" Plaintiff's "face against the bar of [a] gate" (*id.* ¶ 47), and Defendant Santiago used pepper spray on him (*id.* ¶ 40; Pl. Br. ¶ 19). These allegations, accepted as true, do not describe an inmate disobeying orders or failing to submit.

Next, Defendants assert that Plaintiff fails to meet the objective prong of the analysis because he "suffered no substantial harm or injuries" and fails to allege "that the actions of the officers was such that the conscience is shocked." (Def. Br. at 16). But, as alleged, Plaintiff's injuries were of such a nature that Sing Sing's medical staff determined that Plaintiff needed outside medical care. (Compl. ¶¶ 52-59). The Court can therefore make an inference that "the force used" by Defendants "exceeded the amount necessary" under the circumstances. *Burris v. Nassau Cnty. Dist. Att'y*, No. 14-CV-05540, 2017 WL 9485714, at *15 (E.D.N.Y. Jan. 12, 2017) (denying the defendant's motion to dismiss and relying on plaintiff's allegation that he needed to be taken

to a hospital), *adopted by*, 2017 WL 1187709 (E.D.N.Y. Mar. 29, 2017); *see also Gudanowski v. Burrell*, No. 20-CV-00111, 2021 WL 3887612, at *6 (S.D.N.Y. Aug. 31, 2021) (same). Moreover, Plaintiff does not merely assert that he was randomly assaulted; he alleges that Defendants Abdulla, Torres, John Doe officer, and Santiago attacked him out of revenge for the incident that occurred the previous day. These allegations, accepted as true, also satisfy the objective prong. *See Hudson*, 503 U.S. at 9 (explaining that the objective element is met when "prison officials maliciously and sadistically use force to cause harm").

For the same reason, Defendants' argument that Plaintiff failed to adequately allege "state of mind" to meet to the subjective prong (Def. Br. at 15) fails. *See White v. Marinelli*, No. 17-CV-01094, 2019 WL 1090802, at *10 (N.D.N.Y. Mar. 8, 2019) ("[P]hysical assaults by guards to humiliate an inmate, or in retaliation for past conduct, violate the Eighth Amendment."); *Rodriguez v. Burnett*, No. 22-CV-02198, 2023 WL 3902705, at *9 (S.D.N.Y. June 7, 2023) (holding that the plaintiff satisfied the subjective prong by alleging that the defendant acted in retaliation).

Accordingly, Plaintiff has sufficiently alleged his claim for excessive force.

II. <u>Plaintiff's Second Claim for Relief: Failure to Intervene</u>

Plaintiff's second claim for relief is for a failure to intervene against Defendants Velez, Acevedo, Acevedo #2, Rodriguez, Garrett,[10] Jack, Delacruz, and John Doe #24 in violation of the Eighth Amendment. (Compl. ¶ 189).

"[A]ll law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence." *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994). "Failure to intercede results in

---

[10] The New York Attorney General's office identified both Defendants Rodriguez and Garrett as matching the description of John Doe #16 in the Complaint. (Docs. 31, 39). Defendants only assert arguments on behalf of Defendant Rodriguez in their opening brief.

liability where an officer observes excessive force is being used or has reason to know that it will be." *Jean-Laurent v. Wilkerson*, 461 F. App'x 18, 21 (2d Cir. 2012) (summary order). However, "for liability to attach, there must have been a realistic opportunity to intervene to prevent the harm from occurring." *Id.* Thus, "[l]iability may attach only when (1) the officer had a realistic opportunity to intervene and prevent the harm; (2) a reasonable person in the officer's position would know that the victim's constitutional rights were being violated; and (3) the officer does not take reasonable steps to intervene" *Jean-Laurent v. Wilkinson*, 540 F. Supp. 2d 501, 512 (S.D.N.Y. 2008), *aff'd sub nom. Jean-Laurent*, 461 F. App'x at 18.

Defendants argue that Plaintiff failed plead that Defendants Velez, Acevedo, Rodriguez, Jack, Delacruz, and John Doe #24 possessed the requisite knowledge that excessive force was being used or that it will be used on Plaintiff. (Def. Br. at 17). However, Plaintiff alleges that these Defendants were "present during the morning of September 10, 2020" (Compl. ¶ 190), and stationed at various points in "B'Block," where the alleged physical assault occurred (*id.* ¶ 192). Plaintiff further alleges that, from these positions, the Defendants could have intervened to prevent the use of excessive force on Plaintiff. (*Id.* ¶¶ 195-198). Defendants make no argument about whether, from these positions, the named Defendants in this count had a reasonable opportunity to intervene.[11] Thus, at this stage, it is plausible that Defendants Velez, Acevedo, Rodriguez, Garrett, Jack, Delacruz, and John Doe #24 were present during the alleged September 10 physical assault— and thus had knowledge that excessive force was being used and could have intervened—but failed

---

[11] Defendants, in their Reply, argue that Plaintiff failed to allege that "the defendants were temporally or physically near the location of the incident." (Reply at 9). The Court will not consider this argument, which is raised for the first time in the Reply. *See Connecticut Bar Ass'n v. United States*, 620 F.3d 81, 91 n.13 (2d Cir.2010) ("Issues raised for the first time in a reply brief are generally deemed waived.").

to do so. *See Harris v. City of Newburgh,* No. 16-CV-02731, 2017 WL 4334141, at *9 (S.D.N.Y. Sept. 27, 2017).

Accordingly, Plaintiff has sufficiently alleged his claim for failure to intervene.

III. Plaintiff's Third Claim for Relief: Deliberate Indifference to Serious Medical Needs

Plaintiff's third claim for relief is for deliberate indifference to his serious medical needs against Defendants Young and Penelis in violation of the Eighth Amendment. (Compl. ¶ 200; Pl. Br. ¶ 38).

"The Cruel and Unusual Punishments Clause of the Eighth Amendment imposes a duty upon prison officials to ensure that inmates receive adequate medical care." *Salahuddin v. Goord*, 467 F.3d 263, 279 (2d Cir. 2006) (citing *Farmer v. Brennan*, 511 U.S. 825, 832, 844 (1994)). "In order to establish an Eighth Amendment claim arising out of inadequate medical care, a prisoner must prove 'deliberate indifference to [his] serious medical needs.'" *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (quoting *Estelle*, 429 U.S. at 104 (alteration in original)). A plaintiff can prevail on a deliberate indifference to medical needs claim under the Eighth Amendment by satisfying a two-prong test, comprised of an objective component and a subjective component. *See Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011); *see also Sutton v. Rodriguez*, No. 18-CV-01042, 2020 WL 5504312, at *4 (S.D.N.Y. Sept. 8, 2020) ("A plaintiff can prevail on a deliberate indifference to medical needs claim under the Eighth Amendment by satisfying a two-prong test.").

The objective component requires that the alleged deprivation in medical care be "sufficiently serious." *Salahuddin*, 467 F.3d at 279. A deprivation in medical care is sufficiently serious if (1) "the prisoner was actually deprived of adequate medical care" and (2) "the inadequacy in medical care is sufficiently serious." *Id.* at 279-80. The latter inquiry "contemplates a condition of urgency such as one that may produce death, degeneration, or extreme pain." *Charles v. Orange Cnty.*, 925 F.3d 73, 86 (2d Cir. 2019); *see also Harrison v. Barkley*, 219 F.3d

132, 136 (2d Cir. 2000) (holding that the medical need must be a "sufficiently serious" condition that "could result in further significant injury or the unnecessary and wanton infliction of pain"). When medical treatment was provided, but a complaint alleges that treatment was delayed or inadequate, the relevant concern is the "particular risk of harm faced by a prisoner due to the challenged deprivation of care." *Smith v. Carpenter*, 316 F.3d 178, 186 (2d Cir. 2003).

The second prong of the deliberate indifference test under the Eighth Amendment is subjective and requires that the plaintiff demonstrate that the defendant had a sufficiently culpable state of mind. *Nielsen v. Rabin*, 746 F.3d 58, 63 (2d Cir. 2014). That is, the prisoner must state facts showing that the defendant "acted or failed to act while actually aware of a substantial risk that serious inmate harm will result." *Horace v. Gibbs*, 802 F. App'x 11, 14 (2d Cir. 2020).

Defendants argue that Plaintiff fails to allege personal involvement by Defendant Penelis. (Def. Br. at 18-19). Defendants also argue that Plaintiff fails to state a claim because of "the efficacy of treatment" he received at the correctional facility hospital and that he fails to allege a "sufficiently serious injury." (*Id.* at 19; *see also* Reply at 12 (describing Defendants' medical treatment as "timely")).

Plaintiff's allegations, interpreting the *pro se* Complaint with the required liberality, sufficiently allege personal involvement by Defendant Penelis. In particular, Plaintiff alleges that Defendant Penelis was present when he arrived at the Sing Sing correctional-facility hospital and failed to "take the proper actions." (Compl. ¶ 204). Plaintiff, via his opposition brief, also alleged that Defendant Penelis was present at the correctional-facility hospital but failed to provide him with adequate medical treatment. (Pl. Br. ¶ 43); *see Vail*, 68 F. Supp. 3d at 427 (explaining that *pro se* plaintiffs may "supplement[] to th[e] pleadings" through their "opposition memoranda" if is "consistent with the allegations contained in the Complaint").

Plaintiff, however, fails to meet the objective prong because he does not allege a sufficiently serious injury. Plaintiff highlights that he suffered from "extreme agony and pain" as a result of being exposed to pepper spray. (Pl. Br. ¶ 46). But "courts in this circuit have routinely found that while the temporary effects of pepper spray are 'undoubtedly uncomfortable and painful,' they do not establish a sufficiently serious injury." *Williams v. City of New York Dep't of Correction*, No. 19-CV-09528, 2020 WL 3893929, at *4 (S.D.N.Y. July 10, 2020) (collecting cases). Nor are plaintiff's injuries from the alleged physical assault on September 10, 2020, "sufficiently serious" under the objective prong. *Cf. Brown v. Annucci*, No. 19-CV-09048, 2021 WL 860189, at *5 (S.D.N.Y. Mar. 8, 2021) (holding that the plaintiff's allegations that "he had a 'busted eye' that was swollen for two weeks, suffered a laceration under his left eye, and was bleeding out of his right nostril and upper lip" were insufficient to support a deliberate indifference to serious medical needs claim); *Morehouse v. Vasquez*, No. 17-CV-04836, 2020 WL 1049943, at *18 (S.D.N.Y. Mar. 4, 2020) (same but for plaintiff's allegations that he suffered "(1) 'multiple severe bruises,' which he alleges were located on, *inter alia*, his forehead; (2) a black eye; (3) a bloody nose; (4) general 'severe pain and swelling,' including in his groin, stomach, and nose and swelling around his eye; and (5) a sore ankle that hurt for approximately two weeks" (collecting cases)).

Plaintiff also does not allege a sufficiently serious injury through his allegations that Defendants Young and Penelis delayed providing him care by "wait[ing] twenty minutes before washing" the pepper spray from his face and wounds (Pl. Br. ¶ 48; Compl. ¶¶ 51, 201) and waiting "two hours . . . before actually having any form of adequate evaluation" (Pl. Br. ¶ 48). These brief delays in medical care fall short under the deliberate-indifference standard. *See, e.g.*, *Smith v. City of New York*, No. 15-CV-07910, 2016 WL 7471334, at *4 (S.D.N.Y. Dec. 28, 2016) (holding the

that objective prong was not met on motion to dismiss, despite the plaintiff alleging an almost four-hour delay in medical care); *Mitchell v. N.Y. City Dep't of Corr.*, No. 10-CV-0292, 2011 WL 503087, at \*4 (S.D.N.Y. Feb. 14, 2011) (same but for a two-to-three-hour delay in treatment).

Accordingly, Plaintiff's claim for deliberate indifference to serious medical needs is dismissed.

### IV. Plaintiff's Fourth and Fifth Claims for Relief: First Amendment Retaliation

Plaintiff's fourth and fifth claims for relief are for retaliation against Defendants Franco, Requet, Gonzalez, Acevedo, Santiago, John Doe #28, Taylor, Drewes, Quick, Nickens, Pagan, Maid, Jimenez, Jack, Brown-Richbourgh, Darden, and Marsar in violation of the First Amendment. (Compl. ¶¶ 205, 224, 229).

A plaintiff asserting a First Amendment retaliation claim must establish that: "(1) his speech or conduct was protected by the First Amendment; (2) the defendant took an adverse action against him; and (3) there was a causal connection between this adverse action and the protected speech." *Cox v. Warwick Valley Cent. School Dist.*, 654 F.3d 267, 272 (2d Cir. 2011). A plaintiff must allege, with respect to the third element, that the retaliatory motive was a "but for" cause of the adverse action. *See Barkai v. Mendez*, 629 F. Supp. 3d 166, 198 (S.D.N.Y. 2022). In other words, "[i]t is not enough to show that an official acted with a retaliatory motive and that the plaintiff was injured—the motive must *cause* the injury." *Nieves v. Bartlett*, 587 U.S. 391, 398 (2019).

Plaintiff alleges that as a result of filing his September 2020 "inmate claim" about "missing . . . property" and "grievances" about the alleged physical assault (Compl. ¶¶ 70, 206), he faced two substantial acts of retaliation: (1) Defendants Franco, Ruquet, Gonzalez, Acevedo, Santiago, Nickens, John Doe #28, Pagan, and Marsar transferred Plaintiff to an upstate facility on October 22, 2020 (Compl. ¶¶ 103-115, 121, 125-130, 206-209); and (2) Defendants Franco, Ruquet, and

Gonzalez physically assaulted him while Defendant Franco threatened to "beat the 'living shit out of'" him "for writing a grievance against their fellow officers." (Pl. Br. ¶ 60; Compl. ¶¶ 104-105, 207, 214). In addition, Plaintiff alleges that Defendants Taylor, Drewes, Quick, Jimenez, Maid, Jack, Darden, and Brown-Richbourgh all inflicted separate acts of retaliation against him. (*Id.* ¶¶ 69-71, 101, 106, 219, 221, 231, 232-235).

Defendants do not contest that filing a grievance is a constitutionally protected activity. *Accord Davis v. Goord*, 320 F.3d 346, 352–53 (2d Cir. 2003). As a result, Plaintiff meets the first element of a retaliation claim.

With respect to Plaintiff's first broad theory of retaliation—that he was transferred to an upstate facility—Defendants argue that the Complaint fails to allege that they were "personal[ly] involve[d] in the decision to transfer." (Def. Br. at 21). The Court agrees as to Defendants Nickens. Plaintiff merely alleges that he spoke to her on the day of his transfer. (Compl. ¶ 116). This allegation does nothing to tie Defendant Nickens to Plaintiff's transfer.

By contrast, Plaintiff alleges that Defendants Franco, Ruquet, Gonzalez, Acevedo, Santiago, John Doe #28, Pagan, and Marsar each played an active role in transferring him. (*Id.* ¶¶ 103-130). Plaintiff alleges a close temporal nexus—around a month—between Plaintiff filing his grievances and these Defendants' acts. Plaintiff also alleges that Defendants Gonzalez and Acevedo threatened Plaintiff to not resist during his transfer (*id.* ¶¶ 108, 111), and that Defendants Franco and John Doe #28 threatened Plaintiff about filing further grievances (*id.* ¶¶ 105, 117). And Plaintiff had filed a prior grievance against Defendant Santiago. (*Id.* ¶ 206). Together, these allegations suffice to plead personal involvement in the decision to have Plaintiff transferred. "Whether [these] Defendants . . . requested or ordered Plaintiff's transfer, or had the power to do so, cannot be resolved on the present record at this stage of the proceedings." *Tolliver v. Jordan*,

No. 19-CV-11823, 2021 WL 2741728, at *7 (S.D.N.Y. July 1, 2021); *see also Trisvan v. Annucci*, No. 14-CV-06016, 2019 WL 2304647, at *8 (E.D.N.Y. May 30, 2019) (holding that the plaintiff had adequately alleged his retaliation claim against a parole officer because the Court could draw a reasonable inference that the officer "helped to enforce the alleged constitutional violation").

With respect to Plaintiff's second theory of retaliation—the October 22, 2020 physical assault and related threats about his grievances—Defendants argue that Plaintiff failed to satisfy the causation element. Specifically, Defendants argue that Plaintiff "refused to comply" with a prior order to "pack up his belongings" and, therefore, the necessity to remove Plaintiff is what caused the physical altercation with Defendants Franco, Ruquet, and Gonzalez. (Def. Br. at 21). Plaintiff, however, alleges that these Defendants did more than remove him from his cell. He alleges that they "ran into his" cell and used significant force—"punching" his "face and head area." (Compl. ¶ 103). Defendant Franco, during this incident and in front of Defendants Ruquet and Gonzalez, then explicitly threatened Plaintiff for filing prior grievances. (*Id.* ¶ 105). These allegations, combined with the close temporal nexus to Plaintiff's grievances, are sufficient at this stage. *See Baskerville v. Blot*, 224 F. Supp. 2d 723, 732 (S.D.N.Y. 2002) (explaining that courts should consider, among other factors, "the temporal proximity between the protected activity and the alleged retaliatory act" and "statements by the defendant concerning his motivation" "[i]n determining whether a causal connection exists between the plaintiff's protected activity and a prison official's actions"); *Edwards v. Horn*, No. 10-CV-06194, 2012 WL 473481, at *17 (S.D.N.Y. Feb. 14, 2012) (relying on alleged "statements" that "clearly suggest a retaliatory animus" in denying a defendant's motion to dismiss a First Amendment retaliation claim), *adopted by*, 2012 WL 760172 (S.D.N.Y. Mar. 8, 2012).

Finally, Defendants argue that Plaintiff's allegations against Defendants Taylor, Drewes, Jimenez, Jack, Darden, and Brown-Richbourgh "are insufficient to state a cause of action." (Def. Br. at 23). The Court agrees. In particular, Plaintiff fails to allege an adverse action; and all the retaliatory acts alleged against these Defendants are speculative and conclusory. *See Dolan v. Connolly*, 794 F.3d 290, 295 (2d Cir. 2015) (instructing district courts to "approach prisoner retaliation claims with skepticism and particular care" and thus requiring such claims to be "supported by specific and detailed factual allegations").

Defendants makes no specific arguments as to Defendants Maid and Quick. Instead, Defendants broadly assert that "none of the allegations demonstrate personal involvement of any of the Defendants in a deprivation of a constitutional right." (Def. Br. at 23). But Plaintiff alleges that each of these Defendants took specific retaliatory acts: Defendant Quick "refused to file" Plaintiff's "numerous[] grievances" (Compl. ¶ 225), and Defendant Maid refused to mail his "Tier (III) three Superintendent hearing appeal papers" (*id.* ¶ 226). As Defendants make no further argument, Plaintiff's claim against to Defendants Maid and Quick may proceed to discovery.

Accordingly, at this stage, Plaintiff has sufficiently alleged his retaliation claims against Defendants Franco, Ruquet, Gonzalez, Acevedo, Santiago, John Doe #28, Marsar, Pagan, Maid, and Quick. Plaintiff's retaliation claims are dismissed as to Taylor, Drewes, Nickens, Jimenez, Jack, Brown-Richbourgh, and Darden.

V.    Plaintiff's Sixth Claim for Relief: Obstruction of Justice

Plaintiff's sixth claim for relief is for obstruction of justice against Defendants Velez Rodriguez, Garrett, and Byrd. (Compl. ¶¶ 237-241). Defendants argue that this claim is not actionable "under the Constitution or laws of the United States." (Def. Br. at 25). "[O]bstruction of justice is a criminal charge, not a private cause of action." *Farzan v. Bridgewater Assocs., LP*, 699 F. App'x 57, 58 (2d Cir. 2017). There is thus "no private right of action for violations of the

criminal statutes concerning obstruction of justice." *Pierre v. Lieberman*, No. 16-CV-05473, 2017 WL 9565660, at *9 n.6 (S.D.N.Y. June 14, 2017), *adopted by*, 2017 WL 3316266 (S.D.N.Y. Aug. 3, 2017); *accord Daniels v. Am. Airlines*, No. 19-CV-03110, 2020 WL 9816000, at *25 (E.D.N.Y. Sept. 4, 2020) ("The Court agrees with Defendants that there is no private cause of action for obstruction of justice."); *McCain v. Buffalo Wild Wings*, No. 11-CV-00142, 2013 WL 6825098, at *2 (D. Vt. Dec. 23, 2013) ("[O]bstruction of justice 'is a criminal charge that does not provide a private cause of action."). The Court agrees that there is no such claim.

Accordingly, Plaintiff's claim for obstruction of justice is dismissed.

VI. Plaintiff's Seventh Claim for Relief: Section 1985 Conspiracy

Plaintiff's seventh claim for relief is for conspiracy against Defendants Abdulla, Torres, Santiago, Acevedo, and Mayes in violation of 42 U.S.C. § 1985. (Compl. ¶¶ 242-253).

A conspiracy claim under Section 1985 requires a plaintiff to allege that there existed: "(1) an agreement between two or more actors to (2) deprive the plaintiff of a legal right or privilege, (3) that an overt [act] was undertaken in furtherance of the conspiracy, and (4) that the plaintiff sustained an injury to his person or property, or was deprived of a right or privilege of a United States citizen." *Dilworth v. Goldberg*, 914 F.Supp.2d 433, 465 (S.D.N.Y.2012); *see also Dolan*, 794 F.3d at 296. The statute "provides no substantive rights itself but merely 'provides a remedy for violation of the rights it designates.'" *Spencer v. Casavilla*, 903 F.2d 171, 174 (2d Cir. 1990) (quoting *Great Am. Fed. Sav. & Loan Ass'n v. Novotny*, 442 U.S. 366, 372 (1979)).

Plaintiff alleges a sprawling conspiracy by Sing Sing correctional staff aimed at "depriving" him "of his right to have a fair and impartial" disciplinary hearing. (Compl. ¶ 243; *see also id.* 244-253). Defendants argue that Plaintiff fails to allege an "agreement" (*i.e.*, a "meeting of the minds") between the alleged conspirators. (Def. Br. at 26). The Court agrees. Plaintiff does not plead any nonconclusory allegations supporting an inference that Defendants entered into an

agreement. *See Jackson v. Seewald*, No. 11-CV-05826, 2013 WL 149341, at *12 (S.D.N.Y. Jan.

14, 2013) ("[A] plaintiff must provide some factual basis supporting a meeting of the minds, such

that defendants entered into an agreement, express or tacit, to achieve the unlawful end.").[12] For

example, Plaintiff does not even allege any communication among the purported conspirators.

Thus, "it would require pure speculation to use the facts alleged against [Defendants] to assume

[they] formed part of a conspiracy." *O'Neill v. NYU Langone Hosps.*, No. 23-CV-04679, 2024 WL

4216501, at *10 (E.D.N.Y. Sept. 17, 2024).

Accordingly, Plaintiff's claim for relief under 42 U.S.C. § 1985 for conspiracy to obstruct

justice is dismissed.

VII.    Plaintiff's Eighth Claim for Relief: Fourteenth Amendment Procedural Due Process

Plaintiff's eighth claim for relief is for deprivation of procedural due process of law against

Defendants Mayes and Bodge in violation of the Fourteenth Amendment. (Compl. ¶¶ 250-252,

255-262; Pl. Br. ¶ 71).

"[T]o present a [procedural] due process claim, a plaintiff must establish (1) that he

possessed a liberty interest and (2) that the defendant(s) deprived him of that interest as a result of

insufficient process." *Joseph v. Cuomo*, No. 20-CV-03957, 2021 WL 200984, at *6 (E.D.N.Y. Jan.

20, 2021) (quoting *Adams v. Annucci*, No. 17-CV-03794, 2018 WL 4608216, at *6 (S.D.N.Y.

Sept. 25, 2018) (alterations in original)); *see also Velazquez v. Gerbing*, No. 18-CV-08800, 2020

WL 777907, at *9 (S.D.N.Y. Feb. 18, 2020). As to the first element, "the threshold issue is always

---

[12] To the extent that Plaintiff also alleges a conspiracy under Section 1983 (Pl. Br. ¶ 69) and such a claim
is cognizable, *but see Webb v. Goord*, 340 F.3d 105, 110 (2d Cir. 2003) ("The plaintiffs' claim under 42
U.S.C. § 1983, which is styled 'Conspiracy to Violate Civil Rights,' should actually be stated as a claim
under Section 1985, which applies specifically to conspiracies"), that claim fails for the same reason, *see
31FO, LLC v. Inc. Vill. of Lloyd Harbor*, No. 22-CV-03303, 2023 WL 6385187, at *8 (E.D.N.Y. Sept. 29,
2023) ("[T]o survive a motion to dismiss, section 1983 and 1985 conspiracy claims must provide some
factual basis supporting a meeting of the minds[.]").

whether the plaintiff has a property or liberty interest protected by the Constitution." *Vogelfang*, 889 F. Supp. 2d at 510 (quoting *Perry v. McDonald*, 280 F.3d 159, 173 (2d Cir. 2001)). An inmate's liberty interest is implicated by prison disciplinary proceedings only if the sentence "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995); *see also Washington v. Afify*, 681 F. App'x 43, 45 (2d Cir. 2017). As for the second element, the Second Circuit instructs that:

> [i]n a prison disciplinary hearing, due process rights provide that at a minimum, a prisoner is entitled to be confronted with the accusation, informed of the evidence against him and afforded a reasonable opportunity to explain his actions. More specifically, an inmate must receive advance written notice of the charges against him; a hearing affording him a reasonable opportunity to call witnesses and present documentary evidence; a fair and impartial hearing officer; and a written statement of the disposition, including the evidence relied upon and the reasons for the disciplinary actions.

*Williams v. Korines*, 966 F.3d 133, 143 (2d Cir. 2020) (internal citations and quotation marks omitted).

Defendants, in their opening brief, do not make any arguments as to Defendant Mayes.[13] Plaintiff's claim against Defendant Mayes therefore may proceed to discovery. Plaintiff's due process claim against Defendant Bodge arises out of a disciplinary hearing about an August 18, 2020 misbehavior report. (Compl. ¶¶ 255-264; *see also id.* at 255-263 (exhibits to the Complaint related to Plaintiff's disciplinary hearing before Defendant Bodge)). Defendants argue that Plaintiff's allegation demonstrates that he was given sufficient process during that hearing because "he was given notice of the hearing and had an opportunity to rebut the charges." (Def. Br. at 27).

---

[13] Defendants' arguments about Defendant Mayes in their Reply are not going to be considered and are deemed waived. *See Connecticut Bar Ass'n*, 620 F.3d at 91 n.13.

"[A] disciplinary hearing comports with due process when an inmate receives "advance written notice of the charges; a fair and impartial hearing officer; a reasonable opportunity to call witnesses and present documentary evidence; and a written statement of the disposition, including supporting facts and reasons for the action taken." *Brown v. Venettozzi*, No. 18-CV-02628, 2019 WL 4194432, at *4 (S.D.N.Y. Sept. 4, 2019) (quoting *Luna v. Pico*, 356 F.3d 481, 487 (2d Cir. 2004)). According to the Complaint and its attachments,[14] Plaintiff was provided notice of the charges against him (Compl. at 255), given an opportunity to testify in his own defense (*id.* ¶ 257), and granted the opportunity to call witnesses in his defense (*id.* at 263). Put simply, Plaintiff was provided with sufficient process.

Accordingly, at this stage, Plaintiff has sufficiently alleged his due process claim against Defendant Mayes. Plaintiff's due process claim is dismissed as to Defendant Bodge.

VIII.    <u>Leave to Amend</u>

Finally, Plaintiff, at the end of his opposition brief, requests "leave to amend [the] Complaint to address any deficiencies identified by the Court." (Pl. Br. ¶ 73). This request is both procedurally and substantively improper. *See Thomas v. Morley*, No. 20-CV-07520, 2022 WL 394384, at *16 (S.D.N.Y. Feb. 9, 2022) ("Plaintiff's request to amend, contained solely in [his] opposition memorandum, is procedurally defective since a bare request to amend a pleading contained in a brief, which does not also attach the proposed amended pleading[,] is improper under Fed. R. Civ. P. 15."); *Jackson v. Annucci*, No. 20-CV-02008, 2021 WL 2581340, at *2 (S.D.N.Y. June 23, 2021) (denying motion for default judgment made in opposition brief); *Keesh*

---

[14] The Court may consider Plaintiff's attached exhibits on this motion. *Heckman v. Town of Hempstead*, 568 F. App'x 41, 43 (2d Cir. 2014) ("[T]he Court is entitled to consider facts alleged in the complaint and documents attached to it or incorporated in it by reference, documents 'integral' to the complaint and relied upon in it, and facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence.").

*v. Quick*, No. 19-CV-08942, 2021 WL 639530, at *12 (S.D.N.Y. Feb. 17, 2021) (denying request for sanctions made in opposition brief); *Martin v. Mihalik*, No. 19-CV-07979, 2021 WL 1738458, at *1 (S.D.N.Y. May 3, 2021) (denying motion for pro bono counsel made in opposition brief); *Corr. Officers Benevolent Ass'n of Rockland Cty. v. Kralik*, No. 04-CV-02199, 2011 WL 1236135, at *1 n.2 (S.D.N.Y. Mar. 30, 2011) (declining to consider a "cross-motion" made in opposition brief).

Even if the Court were to construe Plaintiff's request in his opposition brief as a sufficient alternative to the motion requirement embodied in the applicable rules, *see* Fed. R. Civ. P. 7(b) ("A request for a court order must be made by motion."), Plaintiff fails to meet his burden for an amendment. *See* Fed. R. Civ. P. 15. He does not offer any new facts that would cure the substantive deficiencies discussed above. Nor does he articulate why an amendment would not be futile. Plaintiff, through his eight filings about this motion (Docs. 89, 92, 93, 98, 99, 114, 115, 117), has seized on the opportunity to amplify his 298-page pleading and, as set forth above, failed to state facts sufficient to overcome the motion to dismiss. Accordingly, leave to amend is denied. *See Reed v. Friedman Mgmt. Corp.*, 541 F. App'x 40, 41 (2d Cir. 2013) (explaining that "leave to amend is not necessary when it would be futile").

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is GRANTED in part and DENIED in part. Defendants' motion to dismiss is GRANTED as to the third, sixth, and seventh claims for relief; the fourth and fifth claims for relief as to Defendants Taylor, Drewes, Nickens, Jimenez, Jack, Brown-Richbourgh, and Darden; and the eighth claim for relief as to Defendant Bodge.

The motion is DENIED as to the first claim for relief as to Defendants Abdulla, Torres, and Santiago; the second claim for relief as to Defendants Velez, Acevedo, Acevedo #2, Rodriguez, Jack, Garrett, Delacruz, and John Doe #24; the fourth and fifth claims of relief as to Defendants Franco, Ruquet, Gonzalez, Acevedo, Santiago, Quick, Maid, Pagan, and Marsar; and the eighth claim for relief as to Defendant Mayes.

Defendants Abdulla, Torres, Santiago, Velez, Acevedo, Acevedo #2, Rodriguez, Jack, Garrett, Delacruz, Franco, Ruquet, Gonzalez, Quick, Maid, Marsar, Pagan, and Mayes are directed to file an answer to the Complaint within 14 days of the date of this Order. The Court will separately docket a Notice of Initial Conference.

The Clerk of Court is respectfully requested to: (1) terminate Young, Penelis, Darden, Nickens, Brown-Richbourgh, Taylor, Drewes, Jimenez, Byrd, and Bodge as Defendants; (2) terminate the pending motion (Doc. 86); and (3) mail a copy of this Opinion and Order to Plaintiff.

**SO ORDERED.**

Dated:    White Plains, New York
          November 20, 2024

_____
PHILIP M. HALPERN
United States District Judge