UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SAIO BARZEE,

Plaintiff,

-against-

SING SING C.O. A.M. ABDULLA, et al.,

Defendants.

**OPINION & ORDER**

23-CV-02328 (PMH)

Philip M. Halpern, United States District Judge:

Saio Barzee ("Plaintiff"), proceeding *pro se* and *in forma pauperis*, presses four claims against A.M. Abdulla, E. Torres, V. Santiago, John Velez, John Acevedo, Acevedo ("Acevedo #2"),[1] Rodriguez, M. Jack, C. Garrett, M. Delacruz, J.P. Franco, M. Ruquet, Gonzalez, Quadrena T. Quick, T. Maid, E. Pagan, Marsar, R.F. Mayes, and two John Does[2] ("Defendants") pursuant to 42 U.S.C. § 1983 alleging violations of his First, Eighth, and Fourteenth Amendment rights. (*See* Doc. 1, "Compl.").[3]

[1] Plaintiff named Sergeant Acevedo as a Defendant in the Complaint. Since then, the New York Attorney General's Office has identified a Sergeant Acevedo as matching the description of one of the John Doe Defendants named in the Complaint. (Doc. 24). As such, there are two defendants with the name "Acevedo" listed on the docket.

[2] The John Doe defendants are identified herein as "John Doe #24" and "John Doe #28," corresponding to the order in which the defendants are listed in the Complaint. (*See* Doc. 1 at 2-3; Doc. 24). There is no indication that these individuals have been identified or served, but they remain parties to this action. Any claims against these unknown actors must, at this juncture, be—and are hereby—dismissed without prejudice for failure to prosecute. "Where discovery has closed and the Plaintiff has had ample time and opportunity to identify and serve John Doe Defendants, it is appropriate to dismiss those Defendants without prejudice." *Delrosario v. City of New York*, No. 07-CV-02027, 2010 WL 882990, at *5 (S.D.N.Y. Mar. 4, 2010); *see also Vanderwoude v. City of New York*, No. 12-CV-09046, 2014 WL 2592457, at *8 (S.D.N.Y. June 10, 2014) ("Discovery in this case has now closed, and the record does not reflect any attempts by Plaintiff to identify and/or serve this defendant. Indeed, neither party has mentioned this defendant in the summary judgment briefing. Based on this record, the Court *sua sponte* dismisses Plaintiff's claims against Defendant Police Officer Jane Doe Number 1 without prejudice for failure to prosecute.").

[3] Citations to specific pages of filings on the docket correspond to the pagination generated by ECF.

Pending before the Court are the parties' cross-motions for summary judgment pursuant to Federal Rule of Civil Procedure 56 filed on December 19, 2025. Defendants seek dismissal of Plaintiff's Complaint. (Doc. 205; Doc. 206, "Defs. Br."; Doc. 206-1, "Defs. 56.1 Stmt."; Doc. 207, "Seguin Decl."; Doc. 208, "Barbanes Decl."; Doc. 209, "Debyah Decl."; Doc. 210, "Quick Decl."). Plaintiff seeks a judgment of liability on his claims for relief.[4] (Doc. 203, "Pl. Br."; Doc. 204, "Pl. Aff."; Doc. 196, "Pl. 56.1 Stmt.").[5] Plaintiff opposed Defendants' motion on January 21, 2026 (Doc. 215, "Pl. Opp."),[6] and Defendants opposed Plaintiff's motion on January 16, 2026

[4] The Court notes that Plaintiff did not file a notice of motion, as required by Local Civil Rule 7.1(a)(1). Failure to comply with Local Rule 7.1 is, on its own, a sufficient ground to warrant denial of a motion, but the Court has discretion to overlook a failure to comply with Local Rule 7.1 and exercises such discretion on this motion given Plaintiff's *pro se* status. *See Doe v. Marriott Ownership Resorts, Inc.*, No. 24-CV-08027, 2026 WL 1875920, at *1 n.2 (S.D.N.Y. June 29, 2026).

[5] Plaintiff's 56.1 Statement was initially filed at Doc. 168 attached to Plaintiff's letter-motion seeking leave to move for summary judgment. Doc. 196 is a typed version of Plaintiff's 56.1 Statement, prepared by Defendants and including responses from Defendants, to which the Court cites herein for ease and clarity. Plaintiff, for the vast majority of his 56.1 Statement, cites to no evidence or to the body of his Complaint. (*See* Doc. 168). Plaintiff filed an additional 56.1 Statement on January 28, 2026 which he states is "in continuation to Plaintiff's prior filed Rule 56.1 statements." (Doc. 217). Plaintiff cites to no evidence whatsoever in this second 56.1 Statement. However, "[t]he Court has broad discretion to decide whether to overlook the failure to comply with local rules and perform an independent review of the record." *Scott v. Koenigsmann*, No. 12-CV-01551, 2016 WL 1057051, at *1 (N.D.N.Y. Mar. 14, 2016). The Court conducted such a review here and considers Plaintiff's 56.1 Statements to the extent his assertions are supported by evidence in the record. The Court is mindful that bald and conclusory statements are not sufficient for a motion for summary judgment. *See Woods v. Acampora*, No. 08-CV-04854, 2009 WL 1835881, at *3 (S.D.N.Y. June 24, 2009).

[6] Plaintiff filed a second opposition to Defendants' motion on January 30, 2026. (Doc. 218). This opposition is virtually identical to Plaintiff's first opposition brief, except that paragraphs 30 and 31 from the first opposition brief are missing and the second opposition brief appears to be incomplete. Plaintiff also noted, in his reply to Defendants' motion for summary judgment, that he "was informed, by a Clerk of the Court's pro se Intake Unit, that Plaintiff's 22 page memorandum of law in opposition to Defendants' motion for summary judgment was never received nor filed by this District Court." (Pl. Reply at 2). Much of Plaintiff's Reply also reiterates the arguments he made in his opposition to Defendants' motion for summary judgment. (*See id.*). However, the docket reflects that Plaintiff's memorandum of law in opposition to Defendants' motion for summary judgment was received and filed. (*See* Doc. 215). Accordingly, the Court cites to Plaintiff's first opposition brief (Doc. 215) throughout this Opinion & Order.

(Doc. 213, "Defs. Opp."; Doc. 213-1, "Mayes Decl.").[7] Defendants filed reply on January 29, 2026 (Doc. 216, "Defs. Reply"), and Plaintiff filed reply on February 2, 2026 (Doc. 219, "Pl. Reply").

For the reasons set forth below, Defendants' motion is GRANTED and Plaintiff's motion is DENIED.

## BACKGROUND

The Court recites the facts only to the extent necessary to adjudicate the extant motion for summary judgment and draws them from the pleadings, Defendants' Rule 56.1 Statement, Plaintiff's Rule 56.1 Statement and the Declarations of Plaintiff, Rachael Seguin, Elizabeth Barbanes Quandera Quick, Sherri Debyah, and Robert Mayes, along with the exhibits annexed thereto.

Plaintiff's claims arise from several incidents which he alleges occurred at Sing Sing Correctional Facility ("Sing Sing"), where Plaintiff was incarcerated from July 31, 2020 through October 22, 2020, including: (1) a September 10, 2020 assault of Plaintiff by Defendants Abdulla, Torres, and Santiago stemming from an argument concerning Plaintiff's use of his radio (the "September 10, 2020 Incident") (Compl. ¶¶ 1-20, 32, 35, 38-39, 169, 171, 174, 176-177, 183, 186); (2) a September 2020 disciplinary hearing regarding a misbehavior report written by Defendant Abdulla, after which Defendant Mayes found Plaintiff guilty of assaulting staff and refusing a direct order ("Disciplinary Hearing") (*id.* ¶¶ 68, 72, 97, 255-264); (3) an October 22, 2020 incident during which Defendants Franco, Ruquet, and Gonzalez allegedly assaulted and threatened Plaintiff for filing grievances (the "October 22, 2020 Incident") (*id.* ¶¶ 100-105, 207,

[7] Defendants filed their opposition brief twice on January 16, 2026. (Doc. 212; Doc. 213). The briefs are identical, except that the first does not include a title page, is in multiple font sizes, and contains no certificate of compliance. (*Compare* Doc. 212, *with* Doc. 213). Accordingly, the Court cites to Defendants' later-filed brief (Doc. 213) in deciding the instant motions.

214); and (4) Plaintiff's October 22, 2020 transfer from Sing Sing to an Upstate Correctional Facility ("Upstate") (*id.* ¶ 131).

I. September 10, 2020 Incident

On September 9, 2020, Plaintiff was playing music in his cell on a Sangean radio which, according to Plaintiff, is a radio that is altered so that it is louder. (*See* Pl. 56.1 Stmt. ¶ 2; Barbanes Decl., Ex. B-1, "Pl. 8/28/2025 Dep. Tr." at 26:9-27:9). Plaintiff got into an argument with several correctional officers regarding the volume of his radio. (Pl. 56.1 Stmt. ¶ 2). Plaintiff initially got into an argument with a Sergeant M. Marmolejos, who threatened to take Plaintiff's radio and issue him a misbehavior report, and then Defendant Abdulla intervened and attempted to take Plaintiff's radio. (Pl. 56.1 Stmt. ¶¶ 3-4; Pl. 8/28/2025 Dep. Tr. at 27:22-28:14, 29:14-30:10, 32:5-35:17). Eventually, Defendant Jack came to Plaintiff's cell and convinced Plaintiff to listen to his music through his headphones. (Pl. 56.1 Stmt. ¶ 4; Pl. 8/28/2025 Dep. Tr. at 36:6-37:13).

The following day, on September 10, 2020, Plaintiff contends that he was assaulted by Defendants Abdulla, Torres, and Santiago after he requested to return to his cell while at "keeplock rec." (Pl. 56.1 Stmt. ¶¶ 6-21; Pl. 8/28/2025 Dep. Tr. at 52-63). Plaintiff, at keep lock rec, passed through a metal detector and then Defendant Abdulla ordered him to submit to a pat frisk. (Pl. 56.1 Stmt. ¶ 7; Pl. 8/28/2025 Dep. Tr. at 52:7-22). Plaintiff, sensing danger, decided to head back to his cell, and Defendant Abdulla escorted him. (Pl. 56.1 Stmt. ¶¶ 8-10; Pl. 8/28/2025 Dep. Tr. at 55:11-56:15). As Plaintiff and Defendant Abdulla were heading up a staircase, Defendants Torres and an unidentified correctional officer arrived. (Pl. 56.1 Stmt. ¶ 11; Pl. 8/28/2025 Dep. Tr. at 56:16-25, 59:12-13). Defendant Abdulla proceeded to punch Plaintiff on the side of his face and a struggle ensued. (Pl. 56.1 Stmt. ¶¶ 13-14; Pl. 8/28/2025 Dep. Tr. at 57:16-59:7). Defendant Santiago arrived and sprayed Plaintiff with pepper spray "at pointblank range" in his face. (Pl. 56.1 Stmt. ¶ 15; Pl.

8/28/2025 Dep. Tr. at 59:18-60:3). Officer Abdulla also allegedly banged Plaintiff's head against a gate, resulting in Plaintiff needing seven stitches above his right eyebrow. (Pl. 56.1 Stmt. ¶¶ 19, 21; Pl. 8/28/2025 Dep. Tr. at 63:5-17). Other correctional officers arrived and took Plaintiff to the facility hospital and then an outside hospital. (Pl. 56.1 Stmt. ¶ 22; Pl. 8/28/2025 Dep. Tr. at 63:5-17). Plaintiff was placed in the special housing unit upon his return. (Pl. 56.1 Stmt. ¶ 27; Pl. 8/28/2025 Dep. Tr. at 66:22-67:3, 71:21-25). Plaintiff was issued an inmate misbehavior report ("IMR") regarding the September 10, 2020 Incident on September 11, 2020. (Pl. 56.1 Stmt. ¶ 28; Defs. 56.1 Stmt. ¶ 35; Barbanes Decl., Ex. F at 2).

The IMR issued to Plaintiff tells quite a different tale. (*See* Barbanes Decl., Ex. E). It states that Defendant Abdulla was escorting Plaintiff back to his cell during keep lock rec when Plaintiff asked if he could go to a different cell to retrieve something. (*Id.*). Defendant Abdulla told Plaintiff that he could not go to the other cell, and Plaintiff yelled: "Fuck That Now I'm Not Going Back To My Fucking Cell." (*Id.*). The IMR states that Plaintiff refused Defendant Abdulla's orders to return to his cell, and "thrusted his right elbow rearward striking Officer Abdulla in the chest area." (*Id.*). Other staff responded, "Necessary Force was used to gain compliance," and "[o]nce mechanical restraints were placed all force ceased and Inmate was escorted by uninvolved staff to the facility ER for medical assessment." (*Id.*). Defendant Abdulla described the incident similarly in the Use of Force Report for the September 10, 2020 Incident. (Barbanes Decl., Ex. F at 34). Officer Torres stated that he "heard a commotion," responded, and Plaintiff struck him in the face. (*Id.* at 32). Defendant Santiago stated that he gave Plaintiff "a direct order to stop" and, when Plaintiff refused, he sprayed Plaintiff with his O.C. cannister and placed him in mechanical restraints. (*Id.* at 37).

## II. Disciplinary Hearing

The IMR that Plaintiff was issued as a result of the September 10, 2026 Incident charged him with a "Tier III" offense; that is, a "high-level disciplinary infraction[] which may result in sanctions of confinement in Special Housing Units." (Mayes Decl. ¶ 2). Plaintiff was charged with Assault on Staff, Violent Conduct, Creating a Disturbance, and Refusing a Direct Order. (Barbanes Decl., Ex. E). Defendant Mayes, at the time the Commissioner's Hearing Officer for Sing Sing, conducted a disciplinary hearing from September 10, 2020 through September 30, 2020 regarding the IMR issued to Plaintiff. (Defs. 56.1 Stmt. ¶ 36; Mayes Decl. ¶ 12).

At the Disciplinary Hearing, Defendant Mayes asked Plaintiff if he would like to call any witnesses on his behalf. (Defs 56.1 Stmt. ¶ 37; Barbanes Decl., Ex. G-1 at 26:16-22). Plaintiff identified eleven potential witnesses—"P. Ramos" and the ten inmates housed in cells V1 through V5 and W1 through W5. (Barbanes Decl., Ex. G-1 at 26:23-28:1). Ten of these potential witnesses refused to testify, but Ramos testified on Plaintiff's behalf. (Mayes Decl. ¶¶ 25-27; Barbanes Decl., Ex. G-2 at 2:15-5:19 (Ramos' testimony), 6:2-8:12 (Defendant Mayes informing Plaintiff that the inmates in V2 through V5 and W1 through W5 refused to testify); Barbanes Decl., Ex. G-3 at 13:3-13 (Defendant Mayes informing Plaintiff that the inmate in V1 refused to testify)). Defendants Abdulla, Santiago, and Torres all testified at the hearing, at Plaintiff's request. (Mayes Decl. ¶¶ 30-32; Barbanes Decl., Ex. G-3 at 2:11-12:14 (Defendant Abdullah's testimony); Barbanes Decl., Ex. G-4 at 2:11-8:20 (Defendant Torres' testimony); Barbanes Decl., Ex. G-5 at 2:10-5:8 (Defendant Santiago's testimony)). Plaintiff was permitted to question all of these witnesses. (Mayes Decl. ¶¶ 27, 30-32). Plaintiff also testified on his own behalf. (Barbanes Decl., Ex. G-1 at 9:5-26:12).

At the conclusion of the Disciplinary Hearing, Defendant Mayes found Plaintiff guilty of Assault on Staff and Refusing a Direct Order, and not guilty of Violent Conduct and Creating a Disturbance. (Mayes Decl. ¶ 40; Barbanes Decl., Ex. G-6 at 4:13-24). Defendant Mayes read his disposition into the record. (Barbanes Decl., Ex. G-6 at 4:13-10:1). Plaintiff was also advised of his right to appeal Defendant Mayes' disposition, and Plaintiff acknowledged understanding his appellate rights. (*Id.* at 9:17-10:2).

III. <u>October 22, 2020 Incident and Transfer to Upstate</u>

Plaintiff was transferred from Sing Sing to Upstate on October 22, 2020. (Defs. 56.1 Stmt. ¶ 4). On October 19, 2022, Plaintiff was informed that he "was supposed to be on the draft." (Pl. 8/28/2025 Dep. Tr. at 75:10-11).[8] Plaintiff, however, "was concerned about [his] legal work," his property, and his safety, so he "refused the draft." (*Id.* at 75:20-76:10).

Plaintiff claims that, on the morning of October 22, 2020, Defendants Franco, Ruquet, and Gonzalez woke him up, punched him repeatedly in the face and head and threatened him not to file any grievances regarding the September 10, 2020 Incident. (Pl. 56.1 Stmt. ¶ 30; Pl. 8/28/2025 Dep. Tr. at 77:2-79:7). Plaintiff was informed that he was again on the draft. (Pl. 8/28/2025 Dep. Tr. at 79:6-7). Plaintiff again "attempted to resist the draft." (Pl. 56.1 Stmt. ¶ 87). Plaintiff's efforts were unsuccessful, and he was ultimately transferred to Upstate that day. (Defs. 56.1 Stmt. ¶ 13).

IV. <u>Plaintiff's Grievances of September 10, 2020 and October 22, 2020 Incidents</u>

Plaintiff has a long history of filing grievances at prison facilities. (*See* Seguin Decl., Exs. A-B). Indeed, Plaintiff successfully filed and appealed nine grievances between 2015 and 2021. (*Id.*). New York State Department of Correction and Community Supervision ("DOCCS")

---

[8] "The draft" refers to the process of being transferred from one correctional facility to another correctional facility. *See, e.g.*, *Matthews v. N.Y. State Dep't of Corr. & Cmty. Supervision*, No. 17-CV-00503, 2023 WL 2664418, at *1, 8 (N.D.N.Y. Mar. 28, 2023) (describing the draft process).

grievance records show no evidence that Plaintiff ever filed grievances regarding the September 10, 2020 or October 22, 2020 incidents. (*Id.*; Quick Decl. ¶ 17).

Plaintiff, however, contends that he did lodge multiple grievances regarding the September 10, 2020 and October 22, 2020 Incidents, but that they were never filed. (*See* Pl. 56.1 Stmt. ¶¶ 27, 31, 104-05). Plaintiff testified at his deposition:

> I filed numerous grievances . . . . I was informed by Correction Officer Harris that the staff member or the grievance committee, grievance people never received my complaint, so I submitted another one. I got it notarized and I submitted numerous grievances. I had my family called and made a complaint on my behalf . . . . I also submitted a letter to the super or — the superintendent in relation to my grievance complaints as well.

(Barbanes Decl., Ex. B-2, "Pl. 9/22/2025 Dep. Tr." at 25:12-26:9). Plaintiff also testified that he filed grievances regarding the September 10, 2020 and October 22, 2020 Incidents while at Upstate. (*Id.* at 27:19-28:5). When asked whether he ever attempted to appeal his grievances to the Central Office Review Committee ("CORC"), Plaintiff stated: "No. I only sent to the grievance office at Sing Sing. I was waiting to get a response so I could appeal the decision. They never gave me the opportunity to appeal the decision. They never filed my grievance." (Pl. 9/22/2025 Dep. Tr. at 42:24-43:5).

DOCCS has records of Plaintiff filing a document titled "Factual Background" to the Inmate Grievance Program ("IGP") office. (Defs. 56.1 Stmt. ¶ 19). This document was not filed by the IGP office, but was instead returned to Plaintiff on September 28, 2020, as the IGP office did not interpret this "Factual Background" to be a grievance. (*Id.*; Quick Decl. ¶ 13). Defendant Quick apparently wrote Plaintiff a memo, advising him to address his concerns at his Disciplinary Hearing. (Quick Decl. ¶ 13). Plaintiff again filed this "Factual Background" to the IGP office on October 21, 2020, this time attaching a copy of the final disposition from his Disciplinary Hearing. (Defs. 56.1 Stmt. ¶ 20; Quick Decl. ¶ 14). Defendant Quick sent Plaintiff another memo on October

22, 2020, advising him that the grievance department was not the correct department to send these documents and to "utilize the appeal mechanism set forth in directive #4932." (Defs. 56.1 Stmt. ¶ 21; Quick Decl. ¶ 15 & Ex. A). DOCCS has records of Plaintiff filing a grievance on November 9, 2020 regarding the October 22, 2020 Incident and his transfer from Sing Sing to Upstate. (Defs. 56.1 Stmt. ¶ 23; Debyah Decl. ¶¶ 13-14 & Ex. C). The superintendent denied this grievance on December 21, 2020, and the decision was delivered to Plaintiff on December 31, 2020. (Defs. 56.1 Stmt. ¶¶ 24-25; Debyah Decl. ¶ 14 & Ex. C). There is no record of Plaintiff ever appealing this grievance to CORC, nor sending any communications to CORC regarding the September 10, 2020 or October 22, 2020 Incidents. (Defs. 56.1 Stmt. ¶¶ 29-32; Seguin Decl., Exs. A-B).

## STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 56, a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is 'material' if it 'might affect the outcome of the suit under the governing law,' and is genuinely in dispute 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Liverpool v. Davis*, No. 17-CV-03875, 2020 WL 917294, at *4 (S.D.N.Y. Feb. 26, 2020) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "'Factual disputes that are irrelevant or unnecessary' are not material and thus cannot preclude summary judgment." *Sood v. Rampersaud*, No. 12-CV-05486, 2013 WL 1681261, at *1 (S.D.N.Y. Apr. 17, 2013) (quoting *Anderson*, 477 U.S. at 248). "The question at summary judgment is whether a genuine dispute as to a *material* fact exists—not whether the parties have a dispute as to any fact." *Hernandez v. Comm'r of Baseball*, No. 22-343, 2023 WL 5217876, at *5 (2d Cir. Aug. 15, 2023) (citing *McKinney v. City of Middletown*, 49 F.4th 730, 737 (2d Cir. 2022)).

The Court's duty, when determining whether summary judgment is appropriate, is "not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." *McKinney*, 49 F.4th at 738 (quoting *Wilson v. Nw. Mut. Ins. Co.*, 625 F.3d 54, 60 (2d Cir. 2010)). Indeed, the Court's function is not to determine the truth or weigh the evidence. The task is material issue spotting, not material issue determining. Therefore, "where there is an absence of sufficient proof as to one essential element of a claim, any factual disputes with respect to other elements of the claim are immaterial." *Bellotto v. Cnty. of Orange*, 248 F. App'x 232, 234 (2d Cir. 2007) (quoting *Salahuddin v. Goord*, 467 F.3d 263, 281 (2d Cir. 2006)).

"It is the movant's burden to show that no genuine factual dispute exists." *Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)). The Court must "resolve all ambiguities and draw all reasonable inferences in the non-movant's favor." *Id.* (citing *Giannullo v. City of New York*, 322 F.3d 139, 140 (2d Cir. 2003)). Once the movant has met its burden, the non-movant "must come forward with specific facts showing that there is a genuine issue for trial." *Liverpool*, 2020 WL 917294, at *4 (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). The non-movant cannot defeat a summary judgment motion by relying on "mere speculation or conjecture as to the true nature of the facts." *Id.* (quoting *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir. 1986)). However, if "there is any evidence from which a reasonable inference could be drawn in favor of the opposing party on the issue on which summary judgment is sought, summary judgment is improper." *Sood*, 2013 WL 1681261, at *2 (citing *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line Inc.*, 391 F.3d 77, 83 (2d Cir. 2004)).

Should there be no genuine issue of material fact, the movant must also establish its entitlement to judgment as a matter of law. *See Glover v. Austin*, 289 F. App'x 430, 431 (2d Cir.

2008) ("Summary judgment is appropriate if, but only if, there are no genuine issues of material fact supporting an essential element of the plaintiffs' claim for relief."); *Pimentel v. City of New York*, 74 F. App'x 146, 148 (2d Cir. 2003) (holding that because plaintiff "failed to raise an issue of material fact with respect to an essential element of her[] claim, the District Court properly granted summary judgment dismissing that claim."). Simply put, the movant must separately establish that the law favors the judgment sought.

The Court is, of course, mindful that "[*p*]*ro se* litigants are afforded a special solicitude," which includes reading their filings "to raise the strongest arguments they suggest." *Mortimer v. City of New York*, No. 15-CV-07186, 2018 WL 1605982, at *9 (S.D.N.Y. Mar. 29, 2018). "It is through this lens of leniency towards *pro se* litigants that this Court must consider a defendant's motion for summary judgment against a *pro se* plaintiff." *Adams v. George*, No. 18-CV-02630, 2020 WL 5504472, at *5 (S.D.N.Y. Sept. 8, 2020). This status does not, however, excuse a *pro se* litigant from making the showing required to defeat summary judgment; he or she must offer more than "bald assertions, completely unsupported by evidence" to overcome the motion. *Wisdom v. Loiodice*, No. 17-CV-04837, 2020 WL 4431590, at *4 (S.D.N.Y. July 31, 2020); *see also Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 50 (2d Cir. 2003) (explaining that the mere fact that a litigant is *pro se* "does not relieve plaintiff of his duty to meet the requirements necessary to defeat a motion for summary judgment"); *Ross v. Koenigsmann*, No. 14-CV-01321, 2017 WL 9511096, at *1 (N.D.N.Y. Aug. 16, 2017), *adopted sub nom. Ross v. Mannava*, 2017 WL 4338883 (N.D.N.Y. Sept. 29, 2017).

Cross-motions for summary judgment do not alter the basic standard. *McGowan v. Stanley*, No. 23-7769, 2024 WL 5038633, at *1 (2d Cir. Dec. 9, 2024). "When both parties move for summary judgment, asserting the absence of any genuine issues of material fact, a court need not

enter judgment for either party." *Roberts v. Genting New York LLC*, 68 F.4th 81, 88 (2d Cir. 2023). Where, as here, the parties have cross-moved for summary judgment, a reviewing court evaluates each party's motion "on its own merits," and draws all reasonable inferences "against the party whose motion is under consideration." *Id.* (quoting *Morales v. Quintel Ent., Inc.*, 249 F.3d 115, 121 (2d Cir. 2001)).

## ANALYSIS

Plaintiff presses four remaining claims pursuant to 42 U.S.C. § 1983 for: (1) excessive force in violation of the Eighth Amendment against Defendants Abdulla, Torres, and Santiago; (2) failure to intervene in violation of the Eighth Amendment against Defendants Velez, Acevedo, Acevedo #2, Rodriguez, Garrett, Jack, Delacruz, and John Doe #24; (3) retaliation in violation of the First Amendment against Defendants Franco, Ruquet, Gonzalez, Acevedo, Santiago, John Doe #28, Marsar, Pagan, Maid, and Quick; and (4) deprivation of his procedural due process rights in violation of the Fourteenth Amendment against Defendant Mayes. (*See* Compl.).

Plaintiff's claims are brought pursuant to 42 U.S.C. § 1983. Section 1983 provides in pertinent part that "[e]very person who, under color of any statute . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the depriviation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . ." 42 U.S.C. § 1983. "[T]his language does not create substantive rights; rather, it creates a mechanism by which individuals can vindicate the violation of rights secured elsewhere." *Santucci v. Levine*, No. 17-CV-10204, 2021 WL 76337, at *3 (S.D.N.Y. Jan. 8, 2021). Thus, to state a claim under § 1983, Plaintiff must demonstrate "(1) a right secured by the Constitution or laws of the United States was violated, and (2) the right was violated by a person acting under color of state law, or a state actor." *Id.* "The first step in any [§ 1983] claim is

to identify the constitutional right allegedly infringed." *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

I. Administrative Exhaustion

Defendants move for judgment as a matter of law on Plaintiff's First and Eighth Amendment claims on their fourth affirmative defense, arguing that Plaintiff failed to exhaust his available administrative remedies as required by the Prison Litigation Reform Act ("PLRA") and, thus, these claims should be dismissed. (*See* Defs. Br.; Doc. 128 ¶ 113). The Court agrees.

The PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This provision "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes," *Hernandez v. Coffey*, 582 F.3d 303, 305 (2d Cir. 2009) (quoting *Porter v. Nussle*, 534 U.S. 516, 532 (2002)), and it is "'mandatory'; [a]n inmate 'shall' bring 'no action' (or said more conversationally, may not bring any action) absent exhaustion of administrative remedies." *Ross v. Blake*, 578 U.S. 632, 638 (2016) (citation omitted). "Moreover, the PLRA 'requires proper exhaustion, which means using all steps that the prison grievance system holds out." *Ayala-Rosario v. Westchester Cnty.*, 19-CV-03052, 2020 WL 3618190, at *4 (S.D.N.Y. July 2, 2020) (quoting *Williams v. Priatno*, 829 F.3d 118, 122 (2d Cir. 2016)). This "means that 'prisoners must complete the administrative review process in accordance with the applicable procedural rules—rules that are not defined by the PLRA but by the prison grievance process itself." *Gottesfeld v. Anderson*, No. 18-CV-10836, 2020 WL 1082590, at *6 (S.D.N.Y. Mar. 6, 2020) (quoting *Johnson v. Killian*, 680 F.3d 234, 238 (2d Cir. 2012)).

As an inmate in the custody of DOCCS, Plaintiff was required to follow a three-step process to exhaust the grievance process. *Amador v. Andrews*, 655 F.3d 89, 96-97 (2d Cir. 2011) (outlining DOCCS' three-step grievance process); *Hayes v. Dahlke*, 976 F.3d 259, 264 (2d Cir. 2020) (same). First, a grievance must be submitted to the Inmate Grievance Resolution Committee ("IGRC"), a facility-level body consisting of inmates and facility staff members, within 21 days of the incident. N.Y. Comp. Codes R. & Regs. ("NYCRR") tit. 7, § 701.4, 701.5(a)-(b). Second, should the inmate be dissatisfied with the conclusion reached by the IGRC, he may appeal that decision to the superintendent of the facility within seven calendar days of receiving the IGRC's determination. NYCRR § 701.5(c)(1). Third, if the superintendent's conclusions are unfavorable, the inmate may appeal that decision to CORC within 7 calendar days of receiving the superintendent's determination. NYCRR § 701.5(d)(1)(i). Only after completing all three steps may an inmate initiate suit. *Davis v. Grant*, No. 15-CV-05359, 2019 WL 498277, at *7 (S.D.N.Y. Feb. 8, 2019). "An aggrieved inmate may appeal to the next level if he has not received a response within the prescribed time frame for each step of the grievance procedure." *Bello v. Long*, No. 15-CV-02148, 2017 WL 4326544, at *2 (S.D.N.Y. Sept. 28, 2017) (citing NYCRR tit. 7, § 701.6(g)(2)).

Defendants have submitted evidence that Plaintiff never filed a proper grievance regarding the September 10, 2022 incident. (Seguin Decl., Exs. A-B). Plaintiff claims that he attempted to file several grievances regarding the September 10, 2022 incident, all of which were not filed by prison staff. (Pl. 56.1 Stmt. ¶¶ 27, 31, 104-05). Plaintiff did properly file a grievance regarding the October 22, 2022 Incident and his transfer to Upstate while incarcerated at Upstate. (Defs. 56.1 Stmt. ¶ 23; Debyah Decl. ¶¶ 13-14 & Ex. C). However, even assuming Plaintiff properly filed grievances of the September 10, 2022 and October 22, 2022 Incidents to the IGP office, it is

undisputed that he did not appeal those grievances to CORC. (*See* Defs. 56.1 Stmt. ¶¶ 29-32; Seguin Decl., Exs. A-B; Pl. 9/22/2025 Dep. Tr. at 42:24-43:5). NYCCR tit. 7, § 701.6(g)(2) states that "matters not decided within the time limits may be appealed to the next step." Indeed, "an inmate who receives no response must still pursue the available appeal, appealing the non-response to CORC." *Colson v. Sanchez*, No. 23-CV-00654, 2026 WL 1662145, at *5 (S.D.N.Y. June 9, 2026). Plaintiff, when asked at his deposition, confirmed that he is familiar with the procedures set forth in NYCRR tit. 7, § 701.6. (*See* Pl. 9/22/2025 Dep. Tr. at 102:6-8). Plaintiff also testified that he did not appeal to CORC. (*See id.* at 42:24-43:5). Plaintiff's failure to take the third step required for proper exhaustion and appeal to CORC is fatal to his First and Eighth Amendment claims. *Accord Matthews v. Ruquet*, No. 24-CV-05589, 2026 WL 2044598, at *5 (S.D.N.Y. July 15, 2026) (granting summary judgment where the plaintiff did "not allege that he ever took this final step and appealed to CORC").

The Supreme Court has acknowledged that there are specific situations in which an inmate is absolved from exhausting his administrative remedies—namely, when they are "unavailable" to him. *Ross*, 136 S. Ct. at 1859-60. An administrative remedy is considered unavailable in three situations: (1) when the remedy "operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates;" (2) when the "administrative scheme might be so opaque that it becomes, practically speaking, incapable of use;" or (3) "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Williams*, 829 F.3d at 123-24 (quoting *Ross*, 578 U.S. at 643-44). "The burden of proving that the grievance procedure is unavailable rests with the plaintiff." *Gayles v. Armor Corr. Health Servs.*, No. 16-CV-01356, 2018 WL 4327924, at *4 (E.D.N.Y. Aug. 15, 2018), *adopted by* 2018 WL 4326932 (E.D.N.Y. Sept. 7, 2018).

Defendants argue that administrative remedies were available to Plaintiff because: (1) "both Sing Sing Correctional Facility and Upstate Correctional Facility maintained the Inmate Grievance Program" during the relevant time periods; and (2) "Plaintiff's own actions show both that the grievance procedure remedies were fully available to the Plaintiff and that Plaintiff had actual knowledge of those procedures through his prior and subsequently appealed grievances." (Defs. Br. at 13-15). The Court agrees.

"Courts have repeatedly found that where a plaintiff has filed parallel grievances, he cannot plausibly argue unavailability, as filing the prior grievances 'demonstrat[es] his familiarity with the procedures, as well as their availability.'" *Hall v. Annucci*, No. 19-CV-05521, 2022 WL 3903255, at *7 (S.D.N.Y. Aug. 30, 2022); *see also Grafton v. Hesse*, 783 F. App'x 29, 31 (2d Cir. 2019) ("[Plaintiff] and his co-plaintiffs, in their complaint, pleaded that they had filed grievances subsequent to the staff members' threats. Based on the record before us, [plaintiff] was never actually prevented from filing a grievance . . . ."). Here, Plaintiff has an extensive history of successfully filing and appealing grievances, both before and after the September 10, 2020 and October 22, 2020 Incidents, including grievances for "Assault by CO," "Threats," and "Harassment/False MBR." (Seguin Decl., Exs. A-B). "That Plaintiff has already availed himself of the IGP by filing grievances—including analogous ones—is the death knell of his contention." *Hall*, 2022 WL 3903255, at *7.

Plaintiff argues in opposition, under *Hemphill v. New York*, 380 F.3d 680 (2d Cir. 2004), that "special circumstances" warrant finding that administrative remedies were not available to him. (Pl. Opp. at 2-4, 20). However, as Defendants correctly note (Defs. Reply at 2), the *Hemphill* standard was overturned by the Supreme Court in *Ross*. *See Ross*, 578 U.S. at 642 (rejecting the "special circumstances" exception to exhaustion as a "freewheeling approach to exhaustion" that

is "inconsistent with the PLRA."); *Williams*, 829 F.3d at 123 (noting that the "special circumstances exception" to the PLRA's exhaustion requirement was "abrogated by *Ross*.").

Plaintiff further argues that his particular situation was "analogous to an inmate who was not informed of the existence of the grievance procedure at all." (Pl. Opp. at 12). Plaintiff, in support of this contention, cites *Burgess v. Garvin*, No. 01-CV-10994, 2004 WL 527053, at *4-5 (S.D.N.Y. Mar. 16, 2004), in which the Court granted the plaintiff's motion for reconsideration, reversed its decision granting summary judgment for the defendants, and found, based on new evidence, that the Department of Justice complaint procedures for Americans with Disabilities Act claims may not have been available to the plaintiff such that he could exhaust his administrative remedies. *Burgess*, however, is inapposite to Plaintiff's situation, even giving Plaintiff every reasonable inference. The plaintiff in *Burgess* submitted "two DOJ response letters to prisoner complaints of disability-based discrimination." *Id.* at *4. The second letter indicated that "the information that New York prisoners [were] provided on ADA grievance procedures include[d] no mention of the DOJ procedures . . . ." *Id.* at *5. Since those "procedural channels [were] not made known to prisoners, they [were] not an 'available' remedy in any meaningful sense . . . ." *Id.* Here, Plaintiff was clearly aware of the procedures for filing and appealing grievances unlike the plaintiff in *Burgess*, as he has successfully filed and appealed many grievances and even testified that he is aware of the DOCCS grievance procedures.

Plaintiff also relies on *Hartry v. County of Suffolk*, 755 F. Supp. 2d 422 (E.D.N.Y. Dec. 15, 2010), for the assertion that his transfer to Upstate Correctional Facility, a little over a month after the September 10, 2022 Incident, and "within a couple of days [of] the grievance and disciplinary appeal papers were submitted for mailing," rendered administrative remedies unavailable to him. (Pl. Opp. at 15). The Court in *Hartry* found that administrative remedies were unavailable to the

plaintiff where he was transferred "less than two days after" he was allegedly assaulted by correctional officers, and the prison facility from which the plaintiff was transferred required filing a grievance within five days of any incident. *Hartry*, 755 F. Supp. 2d at 433-35. This rendered administrative remedies unavailable to the plaintiff under the *Hemphill* "special circumstances" standard, *see id.*, which, as discussed *supra*, was abrogated by the Supreme Court. Regardless, Plaintiff's situation is not analogous to the plaintiff in *Hartry*.

Plaintiff further contends that Defendant Quick did not process his grievance and provided him incorrect advice in response to the "Factual Background" he sent to her. (Pl. Opp. at 12-13). Viewing the evidence in the light most favorable to Plaintiff, Plaintiff submitted his grievance to Defendant Quick twice, she did not process it as a grievance, and, in response to Plaintiff's second attempt to submit his grievance, Defendant Quick incorrectly told him to pursue the appeal mechanism in DOCCS Directive #4932, which pertains to appeals of disciplinary hearings and not grievances. (*See* Quick Decl., Ex. A). However, even crediting Plaintiff's version of events, he was still required to appeal his grievance to the superintendent and then CORC to exhaust his administrative remedies. *Accord Heyliger v. Geber*, 624 F. App'x 780, 782 (2d Cir. 2015) ("[W]hen [plaintiff] did not receive a written response from the IGRC, appeal to the superintendent was still an available administrative remedy."); *Bello*, 2017 WL 4326544, at *3 ("Even assuming plaintiff did not receive a response to his grievance from the superintendent as he alleges, plaintiff was still required to appeal to the CORC if the superintendent adversely disposed of his grievance or failed to timely respond."). Plaintiff did not take these steps.

Finally, Plaintiff argues that "Defendant [M]aid intentionally misplaced and[/]or destroyed Plaintiff's Complaint and appeal papers which Plaintiff attempted to mail . . . to the Commissioner of DOCCS." (Pl. Opp. at 14). Plaintiff claims "that he was physically assaulted and threatened for

filing grievances before Plaintiff was forcefully transferred to Upstate CF." (*Id.*). Defendants respond that "Plaintiff's general allegations of staff hostility do not substitute for the required CORC appeal . . . ." (Defs. Reply at 4). Indeed, the record reflects that Plaintiff was not deterred from filing grievances, both at Sing Sing and Upstate, by any alleged threats from Defendants. Thus, any alleged threats to Plaintiff from Defendants regarding his filing of grievances did not make the grievance procedures unavailable to Plaintiff. *Accord McNab v. Doe*, 686 F. App'x 49, 51 (2d Cir. 2017) ("Appellant asserted that defendants tried to intimidate him . . . . However, none of the actions allegedly taken by the defendants actually prevented Appellant from submitting his complaint letter."); *Grant v. Kopp*, No. 17-CV-01224, 2019 WL 368378, at *6 (N.D.N.Y. Jan. 3, 2019) ("[W]hen an inmate files a grievance, notwithstanding the threats of retaliation and intimidation of which that inmate complains, the failure to fully exhaust under the PLRA will not be excused on this ground.").

In sum, there is no dispute that Plaintiff did not fully exhaust his administrative remedies, as required by the PLRA, and Plaintiff has not met his burden of showing that administrative remedies were unavailable to him. Accordingly, Defendants' motion for summary judgment is granted as to Plaintiff's excessive force, failure to intervene, and First Amendment retaliation claims on Defendants' fourth affirmative defense and Plaintiff's motion for summary judgment is denied as to these claims.

## II. Procedural Due Process

Plaintiff presses a claim for deprivation of his procedural due process rights in violation of the Fourteenth Amendment against Defendant Mayes. (Compl. ¶¶ 250-252, 255-262). Defendants concede that this claim does not require exhaustion through ordinary prison grievance procedures. (*See* Seguin Decl. ¶¶ 14-15; Quick Decl. ¶¶ 10-11); *see also Best v. Newton*, No. 15-CV-04316,

2016 WL 5416505, at *4 (S.D.N.Y. Sept. 28, 2016) ("The exhaustion requirement for disciplinary hearings is satisfied, not through the prisoner grievance program, but rather through an administrative appeal to the warden of the facility."). Defendants instead argue that Plaintiff's procedural due process claim fails on the merits. (Defs. Br. at 17-19). The Court agrees.

"[T]o present a [procedural] due process claim, a plaintiff must establish (1) that he possessed a liberty interest and (2) that the defendant(s) deprived him of that interest as a result of insufficient process." *Joseph v. Cuomo*, No. 20-CV-03957, 2021 WL 200984, at *6 (E.D.N.Y. Jan. 20, 2021) (quoting *Adams v. Annucci*, No. 17-CV-03794, 2018 WL 4608216, at *6 (S.D.N.Y. Sept. 25, 2018) (alterations in original)); *see also Velazquez v. Gerbing*, No. 18-CV-08800, 2020 WL 777907, at *9 (S.D.N.Y. Feb. 18, 2020). As to the first element, "the threshold issue is always whether the plaintiff has a property or liberty interest protected by the Constitution." *Vogelfang v. Capra*, 889 F. Supp. 2d 489, 510 (S.D.N.Y. 2012) (quoting *Perry v. McDonald*, 280 F.3d 159, 173 (2d Cir. 2001)). An inmate's liberty interest is implicated by prison disciplinary proceedings only if the sentence "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995); *see also Washington v. Afify*, 681 F. App'x 43, 45 (2d Cir. 2017). As for the second element, the Second Circuit instructs that:

> [i]n a prison disciplinary hearing, due process rights provide that at a minimum, a prisoner is entitled to be confronted with the accusation, informed of the evidence against him and afforded a reasonable opportunity to explain his actions. More specifically, an inmate must receive advance written notice of the charges against him; a hearing affording him a reasonable opportunity to call witnesses and present documentary evidence; a fair and impartial hearing officer; and a written statement of the disposition, including the evidence relied upon and the reasons for the disciplinary actions.

*Williams v. Korines*, 966 F.3d 133, 143 (2d Cir. 2020) (citation modified).

Defendants argue, under the second element, that Plaintiff was provided "notice of the charges against him," "an opportunity to testify in his own defense," "the opportunity to call

witnesses in his defense," and "was verbally informed of Defendant Mayes' decision, the reasons for his determination, and served with a paper copy of the Superintendent Hearing Disposition Rendered." (Defs. Br. at 206). Thus, "Plaintiff was provided sufficient process" according to Defendants. (*Id.*).

"[A] disciplinary hearing comports with due process when an inmate receives 'advance written notice of the charges; a fair and impartial hearing officer; a reasonable opportunity to call witnesses and present documentary evidence; and a written statement of the disposition, including supporting facts and reasons for the action taken.'" *Brown v. Venettozzi*, No. 18-CV-02628, 2019 WL 4194432, at *4 (S.D.N.Y. Sept. 4, 2019) (quoting *Luna v. Pico*, 356 F.3d 481, 487 (2d Cir. 2004)). As the Court previously stated, the Complaint and its attachments demonstrate Plaintiff was provided all the process to which he was due. (*See* Doc. 122 at 22).[9] The transcript of Plaintiff's Disciplinary Hearing confirms as much. Plaintiff was given notice of the charges against him (Barbanes Decl., Ex. G-1 at 3:19-24), he was allowed to call witnesses (*id.*, Ex. G-1 at 26:23-28:1, Ex. G-2 at 2:15-5:19, Ex. G-3 at 2:11-12:14, Ex. G-4 at 2:11-8:20, Ex. G-5 at 2:10-5:8), he was given documents that he requested to use as evidence (*id.*, Ex. G-2 at 8:6-10:22), and Defendant Mayes provided Plaintiff with a copy of and read Plaintiff his disposition (*id.*, Ex. G-6 at 2:20-10:1).

Plaintiff argues "that Defendant Mayes wrongfully deprived the Plaintiff of the right to: (1) call other inmate witnesses who could've collaborated to the facts stated by both Paul Ramos and the Plaintiff; (2) to adequately cross-examine and question witnesses; (3) to obtain documentary evidence that would have given the Plaintiff an opportunity to present rebuttal evidence that would

[9] Defendants moved to dismiss the Complaint, but made no argument with respect to Plaintiff's procedural due process claim against Defendant Mayes. (Doc. 122 at 21). Thus, the Court dismissed Plaintiff's procedural due process claim as against Defendant Bodge, but not Defendant Mayes. (*Id.* at 22).

[have] further revealed of how the corrections officers were lying about the incident that occurred on September 10th 2020; and (4) to have a hearing officer that is not bias or partial." (Pl. Br. at 19 (citations omitted)). Plaintiff's first three points, as discussed above, are belied by the record.

Plaintiff also argues that Defendant Mayes admitted facts in Plaintiff's Complaint related to Plaintiff's due process claim. (Pl. Br. at 18). It is true that Defendant Mayes did admit to many of the allegations in the Complaint concerning the Disciplinary Hearing. (*See* Doc. 128 ¶ 30). However, the facts admitted by Defendant Mayes do not support Plaintiff's claim, and instead support the conclusion that Plaintiff was given due process at the Disciplinary Hearing. (*See* Compl. ¶¶ 82-95 (noting that Defendant Abdulla, Defendant Torres, Defendant Santiago, and Paul Ramos all testified at the Disciplinary Hearing at Plaintiff's request, summarizing their testimony, and stating that Plaintiff was allowed to review evidence that he requested)).

Plaintiff's sole remaining argument is that Defendant Mayes was not impartial (Pl. Br. at 19-20), but Plaintiff offers no evidence of this other than his own self-serving, conclusory statements. Such assertions are insufficient to support a procedural due process claim such that a reasonable jury could find in his favor. *See Hobes v. Rodriguez*, No. 24-CV-02484, 2025 WL 2324111, at *7 (S.D.N.Y. Aug. 11, 2025) ("Claims of hearing officer bias are common in Section 1983 cases by inmate plaintiffs, and when they are based on purely conclusory allegations, they are routinely dismissed." (quoting *Richardson v. Williams*, No. 15-CV-04117, 2017 WL 4286650, at *10 (S.D.N.Y. Sept. 26, 2017)); *Francis v. Coughlin*, 891 F.2d 43, 47 (2d Cir. 1989) ("[A] plaintiff-inmate armed with nothing more than conclusory allegations of bias and prejudgment should not be able to defeat a well-supported motion for summary judgment . . . .").

Accordingly, Defendants' motion for summary judgment as to Plaintiff's procedural due process claim against Defendant Mayes is granted and Plaintiff's motion for summary judgment on this claim is denied.

## CONCLUSION

Defendants' Motion for Summary Judgment is GRANTED and Plaintiff's Motion for Summary Judgment is DENIED. Plaintiff's claims for excessive force, failure to intervene, First Amendment retaliation, and violation of his procedural due process rights are dismissed.

The Clerk of Court is respectfully requested to enter judgment in favor of Defendants, close this case, and mail a copy of this Opinion & Order to Plaintiff.

**SO ORDERED.**

Dated: White Plains, New York
July 29, 2026

HON. PHILIP M. HALPERN
United States District Judge